IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| STEVEN NIELSEN and ALLISSON LYNN NIELSEN, | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 2:18-cv-02310-DCN |
| vs. | )<br>) **ORDER** |
| UNITED PROPERTY AND CASUALTY INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | )<br>) |

The following matter is before the court on defendant United Property and Casualty Insurance Company's ("UPC") motion to enforce settlement, ECF No. 46, and plaintiffs Steven Nielsen and Allisson Lynn Nielsen's (the "Nielsens") motion to set aside settlement agreement, ECF No. 53. For the reasons set forth below, the court grants the motion to enforce settlement and denies the motion to set aside the settlement agreement.

**I. BACKGROUND**

This action arises from an insurance coverage dispute. The Nielsens own property in Summerville, South Carolina ("the Property") and paid for a homeowner's insurance policy with UPC covering the Property ("the Policy"). On or about October 5, 2015, the Property suffered roof damage from a wind-driven tree branch during South Carolina's "1,000-year flood." The damage also allegedly caused mold and fungus to flourish on and in the roof. The Nielsens filed a claim under the Policy, and UPC inspected the Property. UPC provided an estimate and settlement of damages to the Nielsens, which included a Forensic Structural Evaluation and a check for $1,724.62.

1

The Nielsens subsequently submitted the final damages estimate for mold remediation, loss of use, replacement of personal property, service, and repairs in the amount of $364,262.11. UPC allegedly did not respond to the Nielsens' estimate.

The Nielsens filed this action in the Court of Common Pleas for the Ninth Judicial Circuit in Berkeley County, South Carolina on July 10, 2018. ECF No.1-1. The Nielsens brought causes of action for breach of contract, bad faith, and attorney's fees. Id. UPC removed the action on August 20, 2018. Id. On March 17, 2020, the Nielsens and UPC participated in mediation with mediator Jon L. Austen and signed a settlement agreement (the "Agreement"). ECF No. 44, 46-1. The Agreement provided that the parties "agree to settle" the case for $20,000 and required UPC to issue a settlement check, provide a release, and provide a stipulation of dismissal to the Nielsens within forty-five days of the mediation. ECF No. 46-1. The parties represented to the court that the case was fully resolved in the mediation and requested a conditional order of dismissal. Id. On March 23, 2020, the court dismissed the case without prejudice, while permitting either party to petition the court to enforce settlement within sixty days. ECF No. 45. On March 25, 2020, UPC emailed counsel for the Nielsens a draft release (the "Release") and stipulation of dismissal. ECF No. 46-2, 46-4. UPC overnight delivered the settlement check on April 23, 2020. ECF No. 46-5. However, counsel for the Nielsens notified UPC on May 4, 2020 that the Nielsens refused to sign the Release due to their concern over two of its provisions. ECF No. 46-6.

On May 11, 2020, UPC moved for settlement enforcement. ECF No. 46. On May 22, 2020, counsel for the Nielsens moved to withdraw, which the court granted on May 27, 2020. ECF No. 46, 47. On August 3, 2020, the Nielsens moved to set aside the

settlement agreement and responded to UPC's motion for settlement enforcement. ECF No. 53. On August 17, 2020, UPC replied. ECF No. 54. On October 6, 2020, the court held a telephonic hearing on the motions. At the Nielsens' request, the court postponed the hearing to allow the Nielsens additional time to secure counsel to represent them in the matter. Ultimately, the Nielsens were unable to attain representation and appeared before the court pro se. The court held a second telephonic hearing on both motions on January 20, 2021 (the "January Hearing"). As such, the motions have been fully briefed are now ripe for review.

## II.  STANDARD

In the Fourth Circuit, federal law governs the enforceability of settlement agreements reached in federal cases. Gamewell Manufacturing, Inc. v. HVAC Supply, Inc., 715 F.2d 112, 116 (4th Cir. 1983). Under federal law, "district courts have inherent authority, deriving from their equity power, to enforce settlement agreements." Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002). In order to exercise this power, a district court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." Id. at 540–41. In making these determinations, courts generally rely on standard contract principles. Topiwala v. Wessell, 509 F..App'x. 184, 186 (4th Cir. 2013). The first step is to look to "the objectively manifested intentions of the parties" to determine whether there was a meeting of the minds. Moore v. Beaufort Cnty., 936 F.2d 159, 162 (4th Cir. 1991). To the extent "there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement summarily." Hensley, 277 F.3d at

3

541 (emphasis in original) (footnote omitted). Instead, the district court must hold a plenary evidentiary hearing to resolve the dispute. Id. (quoting Millner v. Norfolk & W. Ry. Co, 643 F.2d 1005, 1009 (4th Cir. 1981)). In the event a settlement "has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is 'comparatively insubstantial.'" Hensley, 277 F.3d at 540 (quoting Millner, 643 F.2d at 1009) (internal citation omitted).

As a general principle, the settlement of disputes is favored by the courts, Williams v. First National Bank, 216 U.S. 582 (1910); consequently, "one who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." Callen v. Pennsylvania R. Co., 332 U.S. 625, 630 (1948). "[H]aving second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement." Young v. F.D.I.C., 103 F.3d 1180, 1195 (4th Cir. 1997).

### III.   DISCUSSION

UPC requests that the court enforce the Agreement, require the Nielsens to execute the Release, award UPC attorney's fees in filing its motion, and dismiss the civil action with prejudice. ECF No. 46. In response, the Nielsens argue that they should not be required to sign the Release and that the Agreement should be set aside due to ineffective assistance of counsel and duress. ECF No. 53. The court first addresses the Nielsens' motion to set aside the Agreement. The court then considers UPC's motion to enforce settlement, finding the dispute over the terms of the Release resolved by the parties.

### A. Motion to Set Aside Settlement

In their motion, the Nielsens contend that the court should set aside the Agreement because it was entered into under duress and due to ineffective assistance by their counsel. For reasons explained below, the court denies the motion on both grounds.

#### 1. Duress

The Nielsens aver that they entered into the Agreement under duress because "they were advised that their counsel would resign after five years of representation if [they] did not agree to unfair [sic] mediation offer." ECF No. 53 at 4.

Under South Carolina law, duress is defined as coercion that puts a person in such fear that he is "bereft" of the quality of mind essential to the making of a contract and the contract was obtained as a result of this state of mind. In re Nightingale's Estate, 189 S.E. 890, 897 (S.C. 1937); Cherry v. Shelby Mut. Plate Glass & Cas. Co., 4 S.E.2d 123 (S.C. 1939). The court is not persuaded that the threat of resignation by the Nielsens' former counsel amounted to coercion that destroyed the Nielsens' free agency to enter into the Agreement, particularly considering that Steven Nielsen is a retired United States Navy Commander presumably experienced in withstanding external pressures. See Blejski v. Blejski, 480 S.E.2d 462, 466 (S.C. Ct. App. 1997) ("[D]uress is viewed with a subjective test which looks at the individual characteristics of the person allegedly influenced, and duress does not occur if the victim has a reasonable alternative to succumbing and fails to take advantage of it."). While their counsel's alleged threat of resignation after five years of representation was probably distressing to the Nielsens, it certainly did not put the Nielsens in such fear that they were "bereft" of the quality of mind to make a contract. The Nielsens could have declined to sign the Agreement and

searched for new representation, but ultimately voluntarily chose to sign the Agreement. As such, the Nielsens' duress argument fails.

### 2. Ineffective Assistance of Counsel

Second, the court addresses the Nielsens' ineffective assistance of counsel argument. The Nielsens "believe they were not represented [] properly by their counsel" during the mediation and during the course of litigation generally. ECF No. 53 at 4. For example, the Nielsens argue their counsel was "totally lost" and "totally unprepared" during the mediation and had only deposed one person over five years. Id. at 3-4 (internal quotations omitted). Unfortunately for the Nielsens, under South Carolina law, such allegations do not justify setting aside the Agreement.

"A litigant who enters the judicial process through the agency of freely chosen counsel always assumes a certain risk that the result achieved will not be satisfactory." Petty v. Timken Corp., 849 F.2d 130, 133 (4th Cir. 1988). "Defeated expectations do not, therefore, entitle the litigant to repudiate commitments made to opposing parties or to the court." Id. A material dispute about the validity of a settlement agreement does not exist where a party merely alleges inadequate representation by his attorney during settlement discussions. Id. In such cases, "[u]nless the resulting settlement is substantially unfair, judicial economy commands that a party be held to the terms of a voluntary agreement." Id.; see also Sherman v. Philip Morris, Inc., 960 F.2d 147 (4th Cir. 1992) (unpublished) (affirming district court's enforcement of a settlement agreement and rejecting plaintiff's argument on appeal that inadequate representation by plaintiff's attorney had rendered his consent involuntary).

Here, the Nielsens' argument that they were inadequately represented by counsel cannot be used to attack the integrity or validity of the Agreement. Petty, 849 F.2d at 133. Instead, the Nielsens' claim of inadequate representation is solely between the Nielsens and their former counsel. See Sherman v. Philip Morris, Inc., 960 F.2d 147 (4th Cir. 1992) (internal citations omitted). Moreover, the court is aware of no basis for finding the Agreement substantially unfair. Indeed, beyond a general claim that the damage to their home greatly exceeded the settlement amount, the Nielsens offer little argument against the essential fairness of the Agreement. See Morning v. Dillon Cty., 2018 WL 2945619, at *1–2 (D.S.C. May 25, 2018), report and recommendation adopted sub nom. Morning v. Dillon Cty. Sheriff's Office, 2018 WL 2940796 (D.S.C. June 12, 2018) (holding that pressure during the mediation process, inadequate representation, failure to understand the release, and expectation to receive a greater amount of settlement proceeds did not make a settlement agreement substantially unfair). At most, the Nielsens appear to have had second thoughts about the level of their recovery. See ECF No. 53 at 3 ("After the mediation, when [the Nielsens] had time to reflect on what had occurred that day, they believed that their lawyers had forced them . . . to sign and agree to a wildly unfair mediation amount."). That does not, however, establish unfairness or justify setting aside an otherwise valid agreement. Petty, 849 F.2d at 132–33. The court is sympathetic to the plethora of problems the Nielsens have suffered as a result of the flood. However, under the strictures of South Carolina law, it must deny the motion to set aside settlement.

### B. Motion to Enforce Settlement

UPC argues that the court should enforce the Agreement by requiring the Nielsens to sign the Release. The Nielsens argue that they should not have to sign the Release, but, setting aside their complaints about the quality of representation by their former counsel, do not dispute that the parties reached a complete agreement at mediation. Instead, they only dispute two provisions in the Release. First, the Nielsens object to a clause that states that the Nielsens agree "that all repairs have been accomplished" (the "Repairs Clause"). ECF No. 53 at 5 (citing ECF No. 46-4 at 4). Second, the Nielsens object to the inclusion of an indemnification clause.[1] See ECF No. 46-6 at 1 (noting that the Nielsens "have refused to sign the settlement agreement with paragraphs 2 & 11 (Indemnification & Acknowledgement of No Fraud)"). In its reply, UPC agreed to modify the Release to remove the Repairs Clause. ECF No. 54 at 2. Moreover, during the January Hearing, counsel for UPC agreed to remove the indemnification provision from the Release. The Nielsens confirmed that they only disputed these two provisions in the Release and have no objection to any other terms of the Release. Because removal of the two objectionable provisions has resolved the dispute over the terms of the Release, the Nielsens are left only with their duress and ineffective assistance of counsel

---

[1] The full text of the indemnification clause is as follows:
Claimants shall and hereby do agree to indemnify, hold forever harmless and defend the Released Parties from any and all liens, claims, suits, demands, proceedings or actions with respect to any benefits received or that may be received by Claimants as to actual or potential injuries or damages arising out of or related in any way to the Incident. Such agreement by Claimants to indemnify, hold forever harmless, and defend the Released Parties shall include, but is not limited to, reimbursing all attorney's fees, litigation expenses and court costs incurred by the Released Parties.
ECF No. 46-4 at 2.

arguments to justify their refusal to sign the Release. Having addressed and rejected those arguments above, the court grants the motion to enforce settlement, subject to UPC removing both the Repairs Clause and indemnification provision from the Release. See Hensley, 277 F.3d at 540 (In the event a settlement "has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is 'comparatively insubstantial.'"). Additionally, because UPC has not presented any evidence that the Nielsens have acted in bad faith in connection with their dispute over the settlement agreement, the court denies UPC's request for attorney's fees in connection with its motion. See Rogers v. Cherokee Creek Boys Sch., Inc., 2008 WL 4065696, at *2 (D.S.C. Aug. 26, 2008) ("[U]nder its inherent powers, the district court has authority to shift attorneys [sic] fees, but . . . only in the extraordinary circumstances where bad faith or abuse can form a basis for doing so.").

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to enforce settlement and **DENIES** the motion to set aside the settlement agreement.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**January 28, 2021
Charleston, South Carolina**